#### UNITED STATES BANKRUPTCY COURT
#### FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| ROBERT WAYNE ULRICH, | ) | Bankruptcy Case No.10-10644 EEB |
| DIANNA MARIE ULRICH, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |

_____

### ORDER ON DARREN ULRICH'S ADMINISTRATIVE EXPENSE CLAIM
_____

THIS MATTER, having come before the Court on the Darren Ulrich's Request for Payment of Administrative Expenses, and the Trustee's Objection, following an evidentiary hearing on the same, the Court hereby FINDS and CONCLUDES:

The Debtor held a partial ownership interest in two properties: (1) a residence located at 3021 South Marion Street, Englewood, Colorado (the "Home"); and (2) a rustic cabin on ten acres of land, located at 10968 County Road 88, Gunnison, Colorado (the "Cabin"). The parties stipulated that the Debtor's interest was a 25% interest in the Home and a 33% interest in the Cabin. The Court was not told the ownership interests of other owners, but the September 23, 1999 quitclaim deed indicates that title to the Home is held by the Debtor, Darren Ulrich, and Stephanie Ulrich. Darren Ulrich ("Darren") is the son of the Debtor. Both Darren and his wife have lived in the Home since its purchase. The Debtor has never lived in the Home. The Cabin, built by Darren, is primarily a summer cabin, given the access conditions and its limited improvements. No evidence indicated whether the Debtor or other co-owners ever used or were able to use it. In fact, very little was disclosed to the Court as to the nature of the Debtor's interest in these properties, other than the fact that he held legal title to a partial ownership interest and that he had never contributed to the expenses of the properties in any way. Darren and his wife have paid all associated expenses of both the Home and the Cabin, including water, utilities, taxes, insurance, mortgage payments, and the like, both pre- and post-petition.

Darren made an offer to the Trustee to purchase the estate's interest in both the Home and the Cabin. The parties entered into a stipulation, entitled "Stipulation for Settlement and Motion to Approve Stipulation" (the "Stipulation"). The Trustee gave notice of the Stipulation to all parties, no one objected, and in due course the Court approved the transfer of the Debtor's interests to Darren. The Stipulation, Notice and Order are lacking in any mention of any claim against the estate held by Darren or the release of any claims, other than the Stipulation's title that references a "Settlement." It does not mention any dispute between the parties and only refers to the Trustee's due diligence in attempting to value the Debtor's interests. In essence, the Stipulation, Notice and Order describe a purchase and sale transaction. Darren purchased the Debtor's interests for $8,500.

Darren is now asserting an administrative expense claim in the amount of $4,429 (the

"Claim"), which he asserts represents the Debtor's share of the real estate taxes, insurance, and mortgage interest payments, based on his fractional interest in both properties, that have accrued since the January 15, 2010 bankruptcy filing date until the time of the sale to Darren.  Darren and his wife claim they have paid these post-petition expenses and have not been reimbursed for any portion of them by the Debtor or the estate.  The Trustee has objected to the Claim on two grounds.  First, he contends that his agreement with Darren included a waiver of any administrative claims.  Second, he denies that the estate received any benefit from the payment of these expenses by Darren and his wife.

Having reviewed the language of the Stipulation itself, the Court concludes that there is no reference to a waiver of claims within its four corners.  Nor is its language unclear or ambiguous.  Earlier negotiations between the parties included references to Darren's Claim, but the final documentation did not. The Court doubts whether the Trustee would have accepted the $8,500 offer if he had realized that the Claim would still exist because it would have improved Darren's prior offer by only about $500.  On the other hand, Darren's counsel made repeated references to his Claim in the offers. One piece of correspondence made reference to a waiver of the Claim, but offered a purchase price of only $3,500.  In later correspondence, counsel chided the Trustee for not responding to his offers and warned of the need to end the estate's obligation to pay a share of the expenses of the properties.  Having heard the testimony of both parties, it was clear to this Court that there was no meeting of the minds on this issue. Finally, it is axiomatic that a release is a *writing* manifesting an intention to discharge another.  13 Sarah Howard James, Corbin on Contracts § 67.9 (Rev'd ed. 2003); *accord* C.R.S. § 4-1-306 (2010)("A claim or right arising out an alleged breach may be discharged . . . without consideration by agreement of the aggrieved party in an authenticated record.")

The parties' presentation of evidence centered on this contractual dispute, but the Court must also determine whether Darren carried his burden of proof to establish the Claim.   The party claiming an administrative expense claim bears the burden of proving that the claim is entitled to priority treatment by a preponderance of the evidence.  *In re Mid Region Petroleum, Inc.*, 1 F.3d 1130, 1133 (10th Cir. 1993).  The "[s]tatutory priorities are to be narrowly construed [b]ecause the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors." *In re Amarex, Inc.*, 853 F.2d 1526, 1530 (10th Cir. 1988); s*ee also In re Native Amer. Systems, Inc.*, 351 B.R. 135 (10th Cir. BAP 2006). In order to establish the Claim, Darren had to prove that: (1) it arises out of a transaction between the claimant and the trustee,  and (2) the estate benefitted from the consideration provided by the claimant.  *In re Mid Region Petroleum, Inc.*, 1 F.3d at 1133. If Darren fails to establish either element, then his Claim must fail.

Did Darren present sufficient evidence that the Claim arose from a transaction between himself and the Trustee?  No testimony or documentary evidence established any transaction or agreement between the two until they entered into a purchase and sale transaction.  There was some mention in the correspondence by Darren's counsel that expenses were accruing and an offer to winterize the Cabin, but the Trustee made no response to these statements and in no way encouraged Darren to pay the full amount of any expenses.  "The purpose of the administrative

expense priority afforded by the Code is to encourage third parties to enter into agreements with the trustee for the benefit of the estate." *In re Nichols*, 2010 WL 6259965, at *5 (9th Cir. BAP 2010). Thus, the claimant must demonstrate "some inducement by the trustee causing the creditor to incur the expense." *Id.* at *6. And the claimant's performance must have been rendered *to the estate*. *Id.*

The *Nichols* decision involved similar facts. Mrs. Nichols held joint ownership in a cabin with her brothers. She and her brothers purchased the estate's interest from her trustee. She later filed an administrative expense claim for the estate's share of the insurance, taxes, utilities, and other costs associated with the cabin. Under these facts, the *Nichols* court concluded that "the bankruptcy court had ample factual grounds for its finding that, 'the trustee never authorized it, the trustee never knew about it.'" *Id.* While it is hard to imagine that a trustee would not realize that property-related expenses were accruing, the *Nichols* court's decision focused on the fact that there had been no inducement on the part of the trustee.

Not only was there no inducement by the Trustee in this case, but the Court further finds that Darren had no intent to benefit the estate when he paid the full expenses. While the expenses were reasonable and necessary expenses to preserve the properties, Darren paid them because he had always paid them in full and because paying them allowed him to retain possession of the properties. There was never an understanding that the Debtor had any obligation to contribute in order to retain his title interest.

Furthermore, Darren did not actually offer into evidence any proof of actual payment. The stipulated exhibits did not include any evidence of the expenses or Darren's payment of them. Darren's original Request for Administrative Expenses included some documentation, but this filing was never entered into evidence.

For these reasons, the Court hereby ORDERS that Darren Ulrich's Request for Payment of Administrative Expenses is DISALLOWED and the Trustee's Objection is SUSTAINED.

DATED this 2nd day of August, 2011.

BY THE COURT:

*Elizabeth E. Brown*

Elizabeth E. Brown
United States Bankruptcy Judge